UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
GIBOU CHERY,

Petitioner,

- against -

**MEMORANDUM & ORDER**
26-CV-4667 (PKC)

RAUL MALDONADO JR., *in his official capacity as Warden, Metropolitan Detention Center Brooklyn*, *et al.*,

Respondents.
-------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

On July 31, 2026, Gibou Chery filed a petition for a writ of habeas corpus to challenge the lawfulness of his detention stemming from his arrest on July 25, 2026 by U.S. Immigration and Customs Enforcement ("ICE"). For the following reasons, the Petition is GRANTED, and Respondents are ordered to release Petitioner from custody immediately and no later than 5:00 p.m. ET on Monday, August 31, 2026.

## BACKGROUND

### I. Factual Background

Petitioner Gibou Chery is a citizen of Sweden who has been living in the United States since July 9, 2024 and is married to a United States citizen who is currently pregnant with their child. (Pet., Dkt. 1, ¶¶ 2, 5.) Petitioner had entered the United States on July 9, 2024 via the nonimmigrant Visa Waiver Program ("VWP"), which authorized Petitioner to remain in the United States without a visa for up to ninety days. (Decl. Mincheol So ("So Decl."), Dkt. 5-1, ¶ 5.) That period expired in October 2024, but Petitioner has remained in the United States. (*Id.*) An individual entering the United States pursuant to the VWP waives any right to later "contest, other

than on the basis of an application for asylum, any action for removal of the [individual]." 8 U.S.C. § 1187.

On July 24, 2026, ICE issued a Form I-200, Warrant for Arrest of Alien as to Petitioner. (So Decl., Dkt. 5-1, ¶ 7.) The next day, July 25, 2026, ICE agents conducted a targeted enforcement operation at LaGuardia Airport in Queens, New York to locate and arrest Petitioner. (*Id.* ¶ 8.) Upon locating Petitioner, who was traveling at the time with his pregnant wife, ICE arrested Petitioner and transported him to an ICE field office. (*Id.* ¶ 9.) Later that day, ICE served Petitioner with a Form 71-058, VWP Notice of Intent to Issue a Final Administrative Removal Order ("Notice of Intent"). (*Id.* ¶ 10.) The Notice of Intent explained that the U.S. Department of Homeland Security ("DHS") determined that Petitioner had entered the United States pursuant to Section 217 of the Immigration and Nationality Act ("INA"), and accordingly had signed and agreed to the conditions of admission under the VWP. (*Id.*) The Notice of Intent further explained that, as a condition of Petitioner's admission to the United States under the VWP, he agreed to waive his right to contest any removal action, other than on the basis of an application for asylum. (*Id.*) When served with the Notice of Intent on July 25, 2026 and given the opportunity to indicate whether he wished to contest removability, he wrote "Applying for Adjustment of Status and my wife is pregnant." (*Id.* ¶ 12; Notice of Intent, Dkt. 5-4 at 2.) Also on July 25, 2026, ICE issued a Form 71-060, Visa Waiver Program Final Administrative Removal Order ("Final Administrative Removal Order" OR "FARO"), and served it on Petitioner. (So Decl., Dkt. 5-1, ¶ 13.) On July 29, 2026, Petitioner was transferred to the Metropolitan Detention Center ("MDC") in Brooklyn, New York, where he remains detained.

On July 31, 2026, ICE Officer Mincheol So filed a Form I-863, Notice of Referral to Immigration Judge ("Notice of Referral") with the Executive Office of Immigration Review

("EOIR"). (*Id.* ¶ 17.) Officer So explains that they had prepared the Notice of Referral because, "although Petitioner did not request asylum, withholding, or deferral of removal, Petitioner selected the 'Other' box on the Notice of Intent to contest removability (which contained Petitioner's handwritten explanation 'Applying for Adjustment of Status and my wife is pregnant')." (*Id.*) Officer So selected the form's "box 3" (referring to aliens requesting asylum and/or withholding of removal under the Convention against Torture) and the subsection for "VWP/violator" because Officer So "believed it most closely described the reason for which Petitioner contested removability." (*Id.*) As a result, the EOIR scheduled a hearing for August 4, 2026, which was adjourned to August 6, 2026. (*Id.* ¶¶ 18–19.) Petitioner appeared *pro se* at the August 6, 2026 proceeding at which the Immigration Judge ("IJ") explained that Petitioner was in "asylum-only proceedings." (*Id.* ¶ 20.) The IJ adjourned the case to August 20, 2026 to afford Petitioner an opportunity to consult with an attorney. (*Id.*) On August 20, 2026, Petitioner appeared with counsel before the IJ. (Decl. Ronald Romero ("Romero Decl."), Dkt. 10-1, ¶ 4.) At the hearing, the IJ instructed Petitioner that he would have until September 10, 2026 to file an asylum application, which he has not done as of at least August 28, 2026. (*Id.*)

Respondents have stated that they believe Petitioner's detention is governed by 8 U.S.C. § 1231(a)(2)(A) ("Section 1231").

## II. Procedural Background

Petitioner filed his Petition for a writ of habeas corpus with the Court on July 31, 2026. (Pet., Dkt. 1.) The following day, the Court issued an Order to Show Cause, directing Respondents to show cause by August 5, 2026 as to why the writ should not be issued. (O.S.C., Dkt. 3.) Respondents requested an extension of time until August 7, 2026 to file their response, (Dkt. 4), which the Court granted, (08/05/2026 Dkt. Order). On August 7, 2026, Respondents filed their response to the Court's Order to Show Cause. (Resp. O.S.C. ("Resp'ts' First Resp."), Dkt. 5.) The

Court then directed Respondents to file an additional submission addressing the particular question of whether a Notice to Appear ("NTA") was ever issued and, if not, why an NTA was unnecessary to justify Petitioner's arrest. (08/10/2026 Dkt. Order.) On August 10, 2026, Respondents filed a supplemental response addressing the Court's questions. (Resp. O.S.C. ("Resp'ts' Second Resp."), Dkt. 6.) On August 22, 2026, Petitioner filed a reply brief in further support of his Petition and addressing Respondents' submissions. (Reply O.S.C. ("Reply"), Dkt. 8.) The Court then directed Respondents to file an additional letter informing the Court of the current status of Petitioner's immigration proceedings and whether their ongoing nature means that they are not sufficiently final to justify detention pursuant to Section 1231. (08/25/2026 Dkt. Order.) Respondents filed the letter as directed by the Court on August 28, 2026. (Resp. O.S.C. ("Resp'ts' Third Resp."), Dkt. 10.)

## DISCUSSION

### I. Jurisdiction

Respondents note in passing that "because Petitioner is subject to a final order of removal, and because the only impediment to removal is an order of this Court, this action is jurisdictionally barred by 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g)." (Resp'ts.' First Resp., Dkt. 5, at 4 n.1.) However, as discussed below, the Court finds that Petitioner is *not* currently subject to a final order of removal, and an order of this Court is *not* the only impediment to his removal—his ongoing asylum-only proceedings are the primary impediment. Furthermore, Petitioner is challenging only the lawfulness of his detention, not the removal order itself. Thus, the Court rejects Respondents' argument that the Court lacks jurisdiction over this *habeas* matter. *See e.g.*, *Zhang v. Genalo*, 814 F. Supp. 3d 307, 319 (E.D.N.Y. 2025) ("Where, as here, a petitioner seeks to use habeas not to stay his removal, but to challenge the lawfulness of his detention, [Section] 1252 does not strip district courts of jurisdiction to review his claims."); *Escobar Salgado v.*

*Mattos*, 809 F. Supp. 3d 1123, 1142 (D. Nev. 2025) ("[I]t is well settled that [Section] 1252(a)(5) only strips a district court of habeas jurisdiction where a petitioner seeks judicial review of a final order of removal." (citation omitted)); *Kirboga v. LaRose*, 819 F. Supp. 3d 1137, 1149 (S.D. Cal. 2025) ("Where a petitioner 'does not challenge any final order of removal, but challenges his *detention* prior to the issuance of any such order' the jurisdiction-stripping provisions do not apply." (quoting *Flores-Torres v. Mukasey*, 548 F.3d 708, 711 (9th Cir. 2008))).

## II. Legality of Detention

The key issue presented here is whether Petitioner's detention is governed by 8 U.S.C. § 1226(a) ("Section 1226(a)") or Section 1231 where Petitioner is a VWP participant served with a purportedly final order of removal but is subject to ongoing asylum-only proceedings before an Immigration Judge. This issue appears to be one of first impression in this Circuit.

Section 1226(a) provides that noncitizens "may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). "[T]he discretionary authority in [Section] 1226(a) requires an individualized bond determination before a noncitizen may be taken into custody." *Hyppolite v. Noem*, 808 F. Supp. 3d 474, 485 (E.D.N.Y. 2025) (citing *Velesaca v. Decker*, 458 F. Supp. 3d 224, 241 (S.D.N.Y. 2020)); *accord Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 494 (S.D.N.Y. 2025) ("[I]t is clear that [Section] 1226(a) requires some exercise of discretion when determining whether or not to detain a noncitizen in the first instance."). On the other hand, Section 1231 governs detention of noncitizens who have been ordered removed. 8 U.S.C § 1231(a)(1)(A). Subsection (a)(2) requires detention of noncitizens during the removal period, which normally begins on the date the removal order becomes administratively final. *Id.* § 1231(a)(2). Thus, the lawfulness of Petitioner's detention hinges on whether the July 25, 2026 removal order, (*see* Dkt. 5-5), is administratively final for the purposes of Section 1231. The Court finds it is not.

In *Johnson v. Guzman Chavez*, the Supreme Court explained that a removal order is administratively final when there are no further agency review proceedings to determine removability, and DHS is free to execute the removal order absent a judicial stay. 594 U.S. 523, 534–35 (2021). While Petitioner's removal order purports to be administratively final, it also states that DHS will not proceed with removal while an application for asylum, withholding, or deferral of removal is pending. (*See* Dkt. 5-5, at ECF[1] 2.). Likewise, DHS policy provides that after a noncitizen like Petitioner is referred to an immigration judge for asylum proceedings, "the order cannot be acted upon unless the IJ denies the claim and any appeals to the Board of Immigration Appeals and federal courts, if a stay of removal is in effect, are exhausted." U.S. Immigration and Customs Enforcement, *Policy Number 11070.1: Visa Waiver Program Removals* 10 (2016), https://www.ice.gov/doclib/foia/policy/directive11070.1.pdf [https://perma.cc/GBA6-BMQ4]. Therefore, it logically follows that where asylum-only proceedings are ongoing, DHS policy bars removal and the agency review process is not complete. Accordingly, the July 25, 2026 removal order is not administratively final.

Courts in at least five districts have reached the same conclusion in similar circumstances, holding that where asylum-only proceedings are pending, a VWP participant is not subject to a FARO and thus cannot be detained pursuant to Section 1231. *See, e.g.*, *Nardella Mago v. Rogers*, No. 2:26-CV-0278 (SPC) (NPM), 2026 WL 532485, at *2 (M.D. Fla. Feb. 26, 2026); *Bader v. Field Off. Dir.*, No. 26-CV-20537 (BB), --- F.Supp.3d ----, 2026 WL 1459639, at *3 (S.D. Fla. May 22, 2026); *AMM v. Thompson*, No. 5:25-CV-1210 (FB), 2025 WL 3296315, at *2 (W.D. Tex. Nov. 26, 2025); *Condappa v. Field Off. Dir.*, No. 3:26-CV-0933 (DAR), 2026 WL 1642814, at *4

[1] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

(N.D. Ohio June 8, 2026); *Simayi v. Dep't of Homeland Sec.*, No. 2:26-CV-0182 (JKW) (LRL), 2026 WL 1909993, at *3 (E.D. Va. July 2, 2026). The only court in this Circuit that has considered this issue in any form held that because the VWP-participant petitioner's asylum-only proceedings were *no longer* pending, the VWP FARO *did* constitute a final order of removal making him subject to detention under Section 1231, which accords with the above-cited case law from other districts. *See Lee v. Warden, Buffalo Fed. Det. Facility*, No. 6:26-CV-6380 (EAW), 2026 WL 1413151, at *5 (W.D.N.Y. May 20, 2026).

Here, Petitioner is in the midst of asylum-only proceedings in front of an IJ, (*see* So Decl., Dkt. 5-1, ¶ 20 (noting Petitioner is in "asylum-only" proceedings before the IJ); Romero Decl., Dkt. 10-1, ¶ 4 (noting those proceedings remain ongoing)), so his order of removal is not administratively final, and hasn't been for many weeks since his referral to the IJ. Respondents contend that this case is different than those cited above because here Petitioner has not submitted an asylum application, whereas there was an application pending in those cited above. (*See* Resp'ts' Third Resp., Dkt. 10, at 1–2.) But Respondents do not explain *why* that distinction is material, and the Court does not find that it is. The key fact here and in the cases cited above is that asylum-only proceedings are pending before an IJ, which is what makes the agency review process ongoing, and what impedes Respondents from removing Petitioner.[2] Indeed, each of the other district courts to reach the same conclusion did so in reliance on the six courts of appeals that have answered when an order is final and thus reviewable by looking to when the asylum-only

[2] *See Nardella* Mago, 2026 WL 532485, at *2 ("Because the administrative proceeding to determine [petitioner]'s removability is ongoing, he is not subject to an administratively final removal order." (citation omitted)); *Bader*, 833 F. Supp. 3d at 1358 ("Petitioner is in asylum-only proceedings before an Immigration Judge. Thus, Petitioner's Administrative Removal Order is not final." (citations omitted)); *Condappa*, 2026 WL 1642814, at *4 ("Because the administrative proceeding to determine [p]etitioner's removability is ongoing, he is not subject to an administratively final removal order.").

proceedings were complete.[3] Respondents do not point to any authority to suggest that Petitioner could be removed while the asylum-only proceedings remain pending merely because an asylum application has not been filed in those proceedings.

Because the asylum-only immigration proceedings to determine Petitioner's removability are ongoing, he is not subject to an administratively final removal order, and accordingly Section 1231 does not govern his detention. *See, e.g.*, *Molina Lara v. Genalo*, 832 F. Supp. 3d 176, 181 n.7 (E.D.N.Y. 2026) (citation omitted). Rather, he is "detained pending a decision on whether [he] is to be removed from the United States." 8 U.S.C. § 1226(a). Accordingly, his detention is governed by Section 1226(a).

Since Petitioner is currently detained pursuant to Section 1226(a), and has been since July 31, 2026 when he was referred to an Immigration Judge, (*see* So Decl., Dkt. 5-1, ¶ 17), Respondents were required to exercise discretion in determining whether to detain Petitioner or release him on bond, *see e.g.*, *R.E.G.C. v. Mullin*, No. 26-CV-3865 (PKC), 2026 WL 1959350, at *2 (E.D.N.Y. July 7, 2026); *Caldas v. Mullin*, No. 26-CV-3295 (PKC), 2026 WL 1704957, at *3 (E.D.N.Y. June 12, 2026); *Arango Carmona v. Maldonado*, No. 26-CV-2005 (PKC), 2026 WL

[3] *See Nicusor-Remus v. Sessions*, 902 F.3d 895, 898 (9th Cir. 2018) ("[T]he denial of an asylum application in asylum-only proceedings 'finalizes' DHS's removal order of a VWP entrant because the VWP entrant is entitled to no other forms of relief."); *Mitondo v. Mukasey*, 523 F.3d 784, 787 (7th Cir. 2008) (construing "the final disposition of an asylum-only proceeding" in VWP case as the "final order[ ] of removal"); *Shehu v. Attorney Gen. of U.S.*, 482 F.3d 652, 656 (3d Cir. 2007) ("[D]enial of a VWP applicant's petition for asylum . . . constitutes 'a final order of removal,' . . . as the alien is entitled to no further process before deportation."); *Kanacevic v. I.N.S.*, 448 F.3d 129, 134 (2d Cir. 2006) ("[B]ecause of the truncated rights available to a Visa Waiver Applicant, the denial of the asylum application is in effect a final order of removal."); *Nreka v. United States Atty. Gen.*, 408 F.3d 1361, 1367 (11th Cir. 2005) ("The denial of an asylum application in a VWP proceeding is so closely tied to the removal of the alien that it can be deemed . . . a final order of removal."); *Salomao v. Garland*, No. 20-1856, 2022 WL 1301773, at *3 (4th Cir. May 2, 2022) ("[D]enying a VWP participant's relief in an asylum-only proceeding functions like a final order of removal.")).

972780, at *3 (E.D.N.Y. Apr. 10, 2026). Since Respondents failed to exercise any discretion in deciding to detain Petitioner pending his removal proceedings, his detention has been and continues to be unlawful.

The appropriate remedy for Petitioner's unlawful detention is release. *See Yao v. Almodovar*, 813 F. Supp. 3d 461, 477 (S.D.N.Y. 2025) ("A bond hearing after the fact, by definition, would not and cannot cure [the] constitutional violation. Although [the petitioner's] release today cannot cure his loss of liberty . . ., this remedy, relative to the procedural one of ordering a bond hearing, is the one that comes closest to doing so." (collecting cases ordering the same remedy)); *Y-C- v. Genalo*, No. 25-CV-6558 (NCM), 2025 WL 3653496, at *7 (E.D.N.Y. Dec. 17, 2025) (concluding that "no relief short of petitioner's immediate release would be appropriate or sufficient" in light of the constitutional violation suffered).

## CONCLUSION

For the foregoing reasons, Gibou Chery's Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, (Pet., Dkt. 1), is GRANTED.

Respondents are hereby ORDERED to release Gibou Chery immediately, and no later than August 31, 2026, at 5:00 p.m. ET. Respondents shall release Petitioner subject to the conditions at which he was at liberty before he was detained, without any additional constraints on his liberty, including, but not limited to, electronic or GPS monitoring. Respondents must release Petitioner with all of his belongings that are in Respondents' possession, including but not limited to identification cards, clothing, and money.

Respondents shall confirm compliance with these directives in a filing on the docket by 12:00 p.m. ET on September 1, 2026.

Respondents may not administratively recharacterize the release granted by this Order as grounds to impose conditions or re-impose existing conditions in conjunction with release

(including release on recognizance or similar instruments) without prior notice to and authorization from the Court.

Respondents shall not re-detain Petitioner without first moving before this Court to demonstrate compliance with all applicable regulatory, statutory, and constitutional requirements necessary to arrest and detain Petitioner. Should Respondents seek to re-detain Petitioner, they are directed to file a motion with the Court that justifies lawful detention. The Court retains jurisdiction to review any subsequent arrest or detention of Petitioner by Respondents to ensure compliance with this Memorandum and Order.

Should Petitioner seek an award of reasonable fees and costs pursuant to the Equal Access to Justice Act, he may do so by filing a letter application on the docket within 30 days of a final judgment in this action. 28 U.S.C. § 2412(d)(1)(B).

The Clerk of Court is respectfully directed to enter judgment consistent with this Order and close the case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: August 31, 2026
Brooklyn, New York